IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Chris Anthony Liverman,<br><br>Petitioner,<br><br>vs.<br><br>Warden of Evans Correctional Institution,<br><br>Respondent. | Case No.: 9:23-cv-03205-JD-MHC<br><br><br>**ORDER AND OPINION** |

This matter is before the Court for review of the Report and Recommendation (the "Report") of United States Magistrate Judge Molly H. Cherry, issued under 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.). (DE 62.) The Report recommends granting Respondent Warden of Evans Correctional Institution's Amended Motion for Summary Judgment (DE 56; DE 57), denying the Petition as to the three grounds remaining in this action, and dismissing the case with prejudice. Petitioner Chris Anthony Liverman, proceeding *pro se*, filed handwritten objections. (DE 73.) Respondent filed a reply. (DE 75.)

The Court liberally construes Petitioner's *pro se* objections and reviews de novo each portion of the Report to which he states a specific ground of disagreement. *See Elijah v. Dunbar*, 66 F.4th 454, 460–61 (4th Cir. 2023). For the reasons below, the objections are overruled, and the Court adopts the Report's recommended disposition as modified and supplemented by this Order. Petitioner's objections identify two limited points requiring clarification: *Strickland* prejudice does not require certainty that the challenged identification would have been suppressed (DE 62 at 52), and

1

review of harmless error on direct appeal is not identical to *Strickland* prejudice for an appellate counsel claim (*id*. at 42–44). Correcting those formulations does not alter the disposition under the governing habeas standards.

## A.     Background

Petitioner was indicted in Richland County for two counts of murder arising from the August 26, 2004, shooting deaths of two juveniles on T.S. Martin Drive in Columbia, South Carolina. (DE 62 at 2.) Following a jury trial in 2006, he was convicted on both counts and sentenced to two consecutive terms of life imprisonment without the possibility of parole. (*Id*.) On direct appeal, Petitioner challenged the trial court's treatment of eyewitness Tyrone Smith's identification under *Neil v. Biggers*, 409 U.S. 188 (1972), and the admission of gang-expert testimony concerning Petitioner's tattoos. The South Carolina Court of Appeals affirmed. *See State v. Liverman*, 687 S.E.2d 70 (S.C. Ct. App. 2009). The Supreme Court of South Carolina granted certiorari on the identification issue and ultimately affirmed. *See State v. Liverman*, 727 S.E.2d 422 (S.C. 2012).

Petitioner then pursued post-conviction relief ("PCR"). After an evidentiary hearing, the PCR court denied relief in a written order dated April 23, 2019. (DE 62 at 3.) Petitioner moved to alter or amend; the PCR court denied that motion, and Petitioner sought appellate review. The South Carolina Court of Appeals denied certiorari on October 4, 2022. (DE 62 at 2–3.) Because that denial did not supply a reasoned merits analysis, the Court must "look through" the PCR court's written order for the claims adjudicated there. *Wilson v. Sellers*, 584 U.S. 122, 125 (2018);

2

*Steen v. Dismukes*, 180 F.4th 663, 668 (4th Cir. 2026) (explaining that AEDPA review focuses on the operative reasoned state court decision).

Petitioner filed this federal habeas action under 28 U.S.C. § 2254 in July 2023. The Petition originally asserted four grounds. After the Court determined that Ground Four contained an unexhausted newly-discovered-evidence claim, Petitioner withdrew that ground so that his exhausted claims could proceed. (DE 49; DE 50 at 2–3.) The Court then recommitted the matter to the Magistrate Judge because the earlier Report had not fully addressed the merits of all preserved claims, particularly the multiple ineffective assistance subclaims in Ground One. (DE 50 at 3.)

Respondent thereafter filed the Amended Motion for Summary Judgment and amended Return and Memorandum now before the Court. (DE 56; DE 57.) Respondent concedes that the fifteen ineffective assistance subclaims in Ground One were preserved for federal habeas review but contends they fail under AEDPA. (DE 56 at 21.) Respondent contends Grounds Two and Three are procedurally defaulted and, in all events, lack merit. (DE 56 at 22–24.) Petitioner opposed the motion (DE 60), Respondent replied (DE 61), and the Magistrate Judge issued the present fifty-five-page Report on April 30, 2026. (DE 62.) The Report recommends summary judgment to Respondent on Grounds One through Three. (*Id*. at 54.)

Petitioner's objections challenge the Report in three principal respects. First, he argues that the Report narrows his Ground Two *Martinez* theory to school records and fails to assess the broader attack on Tyrone Smith's claimed familiarity with him. (DE 73 at 5–7.) Second, he contends the Report improperly accepts the PCR court's

resolution of Ground One, minimizes the asserted prejudice from identification, incarceration, gun theft, fear, gang, tattoo, and closing-argument evidence, and fails to account for cumulative prejudice. (*Id*. at 7–16.) Third, he argues the Report misconstrues Ground Three, fails to apply *Martinez*, and does not address his asserted due process theories under *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972). (*Id*. at 17–20.) Respondent maintains that the Report correctly resolved all three grounds. (DE 75 at 1–3.)

## B.     Legal Standard

### 1.     Review of the Report and Objections

A magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The court must make a de novo determination of those portions of the Report to which a party makes a specific objection. 28 U.S.C. § 636(b)(1). The court may accept, reject, or modify the recommendation, in whole or in part, or recommit the matter with instructions. *Id*. When no specific objection is made, the court need only satisfy itself that there is no clear error on the face of the record. *Diamond v. Colonial Life & Accident Insurance Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

An objection triggers de novo review when it identifies the challenged finding or recommendation with enough specificity to alert the district court to the true ground of disagreement. *Elijah*, 66 F.4th at 460. The objection need not be novel: repeating an argument previously made to the Magistrate Judge does not reduce

review to clear error when the ground of objection is otherwise clear. *Id.* at 460–61. And *pro se* objections are construed liberally. *Id.* at 461. Petitioner's three objections satisfy that standard, so the Court reviews each challenged portion of the Report de novo.

### 2.    Federal Habeas Review and Ineffective Assistance

For a claim adjudicated on the merits in state court, § 2254(d) bars federal habeas relief unless the state court adjudication was contrary to, or involved an unreasonable application of, clearly established Supreme Court law, or rested on an unreasonable determination of the facts in light of the state court record. 28 U.S.C. § 2254(d). A federal court does not ask whether the state court was merely incorrect; the state decision must be objectively unreasonable. *Harrington v. Richter*, 562 U.S. 86, 101–03 (2011). The Fourth Circuit has described that inquiry as a "very high bar." *Mahdi v. Stirling*, 20 F.4th 846, 894 (4th Cir. 2021). Review under § 2254(d) ordinarily is limited to the record before the state court that adjudicated the claim. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Claims of ineffective assistance are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must establish both deficient performance and prejudice. *Id.* at 687. Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; a reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* at 694. When a state court has adjudicated a *Strickland* claim on the merits, federal

5

review is "doubly" deferential because both *Strickland* and AEDPA require latitude for reasonable judgments. *Richter*, 562 U.S. at 105.

Procedural default is analytically distinct. Ordinarily, ineffective assistance of state PCR counsel cannot supply cause to excuse default. *Coleman v. Thompson*, 501 U.S. 722, 752–54 (1991). *Martinez v. Ryan*, 566 U.S. 1 (2012), recognizes a narrow equitable exception for a substantial, procedurally defaulted claim of ineffective assistance of trial counsel when state law requires that type of claim to be raised initially in collateral review and initial review collateral counsel was absent or ineffective. *Id.* at 9, 14, 17. In this Circuit, a petitioner invoking *Martinez* must show that initial PCR counsel was deficient for failing to exhaust the underlying trial-counsel claim and that the underlying claim is substantial, or has some merit, as to both *Strickland* prongs. *Owens v. Stirling*, 967 F.3d 396, 422–423 (4th Cir. 2020); *Mahdi*, 20 F.4th at 893–94. *Martinez* does not create an independent constitutional claim against PCR counsel. *See* 28 U.S.C. § 2254(i). Nor is its exception a general vehicle for excusing default of other constitutional claims. *See Davila v. Davis*, 582 U.S. 521, 529–33 (2017).

## C.   Discussion

### 1.   Objection One - Ground Two and the *Martinez* Claim

Ground Two alleges that trial counsel failed to investigate and develop evidence undermining Tyrone Smith's claimed prior familiarity with Petitioner and that PCR counsel failed to preserve that trial-counsel claim. (DE 1 at 7, 16–17; DE 62 at 47.) The Report treated the claim as procedurally defaulted and analyzed

6

whether *Martinez* supplied cause. It concluded that PCR counsel was not deficient for omitting the claim and, alternatively, that the underlying trial-counsel claim was not substantial. (DE 62 at 47–52.) Respondent advances substantially the same position. (DE 56 at 22–23, 39–41; DE 75 at 1–2.)

Petitioner objects that his theory is broader than the Report describes. He says the issue was not merely whether school records would show that he and Smith attended different schools. (DE 73 at 5.) Rather, trial counsel allegedly failed to investigate the nature and extent of Smith's claimed prior contacts with Petitioner, including employment history, early investigative materials, dispatch information, and other circumstances that Petitioner says could have undercut Smith's familiarity narrative. (DE 73 at 5–7.) He separately challenges the Report's statement that he could not establish prejudice because he could not demonstrate that Smith's identification "would have been suppressed" under *Biggers*. (DE 73 at 7; DE 62 at 52.)

The Court agrees with Petitioner only as to that formulation of prejudice. A *Martinez* gateway requires an underlying trial-counsel claim with "some merit," and in this Circuit that substantiality inquiry reaches both *Strickland* prongs. *See Owens*, 967 F.3d at 423; *Mahdi*, 20 F.4th at 893–94. *Strickland* prejudice, however, asks whether there is a reasonable probability that counsel's alleged deficiency changed the result—not whether a suppression ruling can be established with certainty. *See Strickland*, 466 U.S. at 694. The Court, therefore, does not adopt the Report to the extent its statement that Petitioner could not demonstrate the identification "would

have been suppressed" can be read to impose a certainty-of-suppression requirement. (DE 62 at 52.)

Applying the correct standard de novo, however, Ground Two remains procedurally barred. The trial record already placed substantial pressure on Smith's claimed familiarity and identification. Smith testified that he had known Petitioner since childhood but not because they attended the same school; trial counsel expressly elicited that they went to different schools. Smith described meeting Petitioner through their mutual acquaintance Goo, seeing Petitioner during visits near Smith's aunt's apartment, and later seeing him at McDonald's, at a basketball court two weeks before the shooting, and at Bayberry on the afternoon of the shooting. Trial counsel cross-examined Smith about the limited nature of those encounters, his inability to recall details, inconsistencies in prior statements, distance, lighting, the bandana description, shoes, and the suggestive one-person show-up. (DE 62 at 50–52; App. at 875–77, 900–04, 937–41.) Those are the same categories of reliability concerns emphasized in the objection. (DE 73 at 5–7.)

Familiarity also was not the only support for the identification. Before the police show up, Smith identified the shooter to Investigator Gray by the nickname "Baby Jesus." *Liverman*, 727 S.E.2d at 428. Smith then made an immediate show-up identification. Other trial evidence independently placed Petitioner at the scene and tied him to gunfire: Diego Thompson testified that Petitioner produced a .22-caliber rifle and fired toward the house; Shante Bethel testified that Petitioner returned after the shooting and described what had occurred; and Petitioner admitted that he

8

was present and fired a weapon, although he disputed firing the fatal shots. (DE 62 at 4–8.) The Supreme Court of South Carolina likewise emphasized that the weaknesses in Smith's identification were extensively explored before the jury. *See Liverman*, 727 S.E.2d at 428–29.

The objection identifies additional investigative avenues, but it does not identify concrete admissible evidence—by record citation or proffer—that would materially alter the impeachment already presented to the jury or the corroborating evidence summarized above. (DE 73 at 5–7.) Even assuming further investigation could have impeached portions of Smith's familiarity account more effectively, the record does not show a reasonable probability of a different trial result when that additional impeachment is weighed against the identification evidence and corroboration. The underlying trial-counsel claim, therefore, lacks the required substantiality under *Martinez*.

Petitioner also has not shown the separate *Martinez* requirement that initial PCR counsel performed deficiently by omitting this distinct investigative theory. *See Owens*, 967 F.3d at 423; *Mahdi*, 20 F.4th at 893–94. PCR counsel litigated numerous ineffective assistance claims, while the reliability of Smith's identification and trial counsel's attacks on it had received extensive consideration on direct appeal. (DE 62 at 48–49; App. at 2360–90.) The objection identifies ways PCR counsel could have framed the issue more expansively, but it does not show that omitting this distinct theory fell outside the wide range of reasonable professional judgment. (DE 73 at 5–

9

7.) Accordingly, Objection One is overruled, and the Report is adopted as modified by the Court's clarification of the prejudice standard.

### 2.     Objection Two - Ground One

Ground One contains fifteen preserved claims of ineffective assistance by trial and appellate counsel. The PCR court adjudicated those claims, and the Report reviewed the PCR court's rulings under § 2254(d). (DE 62 at 17–46.) Petitioner's second objection challenges the Report's treatment of Smith's identification (DE 73 at 9–10), the opening reference to his pretrial incarceration and the gun-theft evidence (*id.* at 10-11), Smith's fear testimony and the jury safety note (*id.* at 12), the gang and tattoo evidence (*id.* at 13), the challenged closing arguments (*id.* at 14), the appellate counsel claims (*id.* at 14–15), and cumulative prejudice (*id.* at 15–16; see also *id.* at 8–9). The Court addresses each category below after de novo review of the challenged portions of the Report and the state court record identified by the parties.

### a.     Trial counsel claims

**Identification.** Petitioner argues that the Report understates the unreliability of Smith's identification, pointing to nighttime lighting, distance, inconsistent descriptions, uncertainty about a bandana and weapon details, the suggestive show-up, Smith's nickname references, and Investigator Gray's role in preparing portions of Smith's statements. (DE 73 at 9–10.) The PCR court did not ignore the reliability question. It considered Dr. Dawn McQuiston's testimony concerning eyewitness memory, including her acknowledgment that she would not opine that a particular identification was reliable or unreliable, and it considered the

10

extensive impeachment trial counsel actually conducted. (DE 56 at 24–25; DE 62 at 19–23.) Trial counsel cross examined Smith on many of the same weaknesses now identified in the objection, and the state appellate record also contained corroborating evidence independent of Smith. Against that record, the PCR court could reasonably conclude that counsel's handling of the identification evidence, including the decision not to call an identification expert, did not create a reasonable probability of a different result. The objection, therefore, does not show an objectively unreasonable *Strickland* adjudication under § 2254(d).

**Pretrial incarceration reference.** Petitioner next objects to the PCR court's treatment of defense counsel's opening reference to the approximately twenty-six months Petitioner had spent incarcerated awaiting trial. He emphasizes that the attorney who delivered the opening did not testify at the PCR hearing and argues that the PCR court, therefore, speculated when it characterized the disclosure as strategic. (DE 73 at 10–11.) The PCR court, however, examined the opening itself and placed the statement within the defense theme that police prematurely fixed on Petitioner and then spent years building a weak case around the wrong person. Respondent's amended memorandum quotes that context and explains that the reference was framed as the length of time Petitioner had awaited an opportunity to clear his name, not as character evidence suggesting guilt. (DE 56 at 25–26.) Under *Strickland* and AEDPA, the absence of counsel's testimony did not require the PCR court to infer deficient performance where the record itself supplied an objectively plausible strategic explanation. The PCR court's finding was not unreasonable.

11

**Gun theft evidence.** Petitioner argues that the false gun theft narrative was prejudicial when introduced and that counsel's later rebuttal did not erase the harm, particularly because rebuttal required disclosing prior incarceration. (DE 73 at 11.) Investigator Gray testified that Thompson had said Petitioner stole the firearm that later became relevant to the murder investigation. The defense obtained a gun trace and incarceration records showing that Petitioner could not have committed that theft, then used the contradiction to attack Thompson's credibility and the quality of the police investigation. (DE 56 at 27–28; App. at 2429–30.) The record also reflects that the prosecutor did not urge the jury to find that Petitioner was the original thief; in closing, the State argued that the identity of the thief was not material to who possessed the weapon at the time of the shooting. (DE 56 at 15, 27–28.) The objection fairly identifies a potential evidentiary cost to the defense strategy. But that cost does not itself make counsel's choice objectively unreasonable under *Strickland*. The PCR court could reasonably conclude that counsel used the contradiction to advance the third-party-guilt theory and that the limited, offense-unspecified incarceration evidence did not create a reasonable probability of a different verdict. This appears to be a strategic move on the part of counsel. Its adjudication was not objectively unreasonable.

**Fear testimony and jury note.** Petitioner links Smith's statement that he was afraid to testify with the jury's later note asking about safety precautions and argues that the two together show fear entered deliberations. (DE 73 at 12.) The PCR court examined the actual testimony and found that Smith expressed concern about

12

appearing on television and being recognized in the community, not fear that Petitioner had threatened him. It also noted that the exchange was brief and that Petitioner's gang affiliation itself was not disputed at trial. (DE 62 at 28–29; App. at 2430–31.) The jury note confirms that jurors had safety concerns. Still, it does not establish that they treated Smith's brief testimony as proof of guilt or that an objection to that testimony would have produced a reasonable probability of a different verdict. This does not rise to the level of concern from *Remmer v. United States*, 350 U.S. 377 (1956). The PCR court's prejudice determination, therefore, remains within the range of reasonable adjudications.

**Gang and tattoo evidence.** Petitioner argues that the Report grouped related gang-and-tattoo claims too broadly and minimized the prejudicial force of evidence portraying him as dangerous. (DE 73 at 13.) The State's theory was that the shooting arose from gang retaliation, making some gang evidence relevant to motive. Trial counsel repeatedly challenged the State's gang-expert evidence, moved for mistrial, and ultimately called a defense expert who testified that the challenged teardrop and hash mark tattoos could have multiple, noninculpatory meanings. (DE 62 at 31–36; App. at 2431–35.) Although the Report discussed related subclaims together, it traced the PCR court's rulings on the distinct objections, preservation issues, rebuttal testimony, and prejudice. (DE 62 at 31–36.) Grouping related issues for discussion did not relieve the Court of claim-specific AEDPA review, and the objection does not show that the PCR court's individual *Strickland* determinations were objectively unreasonable.

13

**Closing argument.** Petitioner separately argues that the Report did not analyze each challenged closing comment—including alleged vouching, bolstering, burden shifting, gang-based fear rhetoric, personal attacks, and emotional or Golden Rule appeals—with sufficient specificity. (DE 73 at 14.) The PCR court identified the challenged categories, considered whether the comments were objectionable or prejudicial, and evaluated them in the context of the entire trial and the jury instructions. (DE 62 at 36–40; App. at 2435–37.) The Report then reviewed that adjudication under § 2254(d), including the PCR court's treatment of the comments and curative force of the instructions. (DE 62 at 36–40.) AEDPA review did not require the Magistrate Judge to treat each phrase as a freestanding federal claim where the PCR court had adjudicated the related Strickland allegations. The objection does not show that the state court's deficiency or prejudice determinations were objectively unreasonable.

### b.    Appellate counsel claims

Petitioner's objection to the appellate counsel claims requires separate clarification. The preserved claims before the Court—Ground One, Claims 14 and 15—concern appellate counsel's handling of the gang-expert evidence at two stages of direct review: counsel's presentation of the issue to the South Carolina Court of Appeals and counsel's decision not to pursue the Court of Appeals' ruling on that issue in the Supreme Court of South Carolina. (DE 62 at 40–44.) Petitioner argues that the Report gave dispositive effect to the Court of Appeals' alternative harmless error ruling and, more broadly, failed to account for arguments he contends appellate

14

counsel should have pursued instead. (DE 73 at 14–15.) The Court considers that objection while keeping the § 2254 inquiry focused on the appellate-counsel claims adjudicated by the PCR court and preserved in Ground One. Respondent answers that the PCR court independently found neither deficient performance nor prejudice and that the Report properly treated the Court of Appeals' harmless error determination on the related gang-evidence issue as additional support for the absence of *Strickland* prejudice. (DE 75 at 2.)

Petitioner is correct that direct appeal harmless error and *Strickland* prejudice are distinct inquiries. (DE 73 at 15.) For an ineffective assistance of appellate counsel claim, prejudice requires a reasonable probability that, but for counsel's deficient performance, the petitioner would have prevailed on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285–89 (2000). The Court of Appeals' determination that an underlying evidentiary error was harmless does not, by itself, resolve that later constitutional inquiry. Accordingly, the Court does not adopt the Report to the extent it can be read to treat the Court of Appeals' harmless error ruling as independently dispositive of *Strickland* prejudice.

That clarification does not undermine the PCR court's adjudication. The relevant habeas question is whether the PCR court unreasonably applied *Strickland* when it found that Petitioner failed to establish deficient performance or a reasonable probability of a different appellate result. *See Mahdi*, 20 F.4th at 894. The Court of Appeals' harmless error ruling remains relevant to that inquiry—not because harmless error and *Strickland* prejudice are interchangeable, but because the state

15

appellate court's disposition bears on the strength and likely effect of the argument Petitioner contends counsel should have presented differently or pursued further.

The record provides other support for the PCR court's determination. The Court of Appeals held that the challenged character evidence aspect of the gang-expert issue was unpreserved and also concluded, in the alternative, that any error was harmless. (DE 56 at 38; DE 62 at 42–44.) Appellate counsel thereafter selected the *Biggers* identification issue for further review in the Supreme Court of South Carolina, obtained certiorari, and persuaded that court to reject the prior *McLeod* rule. Even so, the Court ultimately affirmed Petitioner's convictions. *Liverman*, 727 S.E.2d at 427–29. Petitioner also presented no testimony from appellate counsel at the PCR hearing explaining the challenged issue-selection decisions. (DE 62 at 41–44; App. at 2437–39.)

Against that record, the PCR court reasonably could conclude that Petitioner had not overcome the presumption that appellate counsel exercised professional judgment in selecting the issues to pursue and had not shown that the unpursued gang-evidence arguments were plainly stronger than the issue counsel selected for further review. *See Jones v. Barnes*, 463 U.S. 745, 751–54 (1983); *Smith*, 528 U.S. at 288; *Davila v. Davis*, 582 U.S. 521, 533 (2017). For substantially the same reasons, the PCR court reasonably could find no reasonable probability that different presentation of the gang-evidence issue before the Court of Appeals, or further pursuit of that issue in the Supreme Court of South Carolina, would have produced a different appellate result.

16

Accordingly, the Court overrules this portion of Objection Two and adopts the Report's recommended disposition of Claims 14 and 15 but modifies its reasoning to the extent stated above concerning the significance of the Court of Appeals' harmless error determination.

### c.    Cumulative prejudice

Finally, Petitioner contends that the Report improperly evaluated alleged deficiencies in isolation and failed to account for the combined effect of the identification evidence, incarceration references, gun theft narrative, fear testimony, gang and tattoo evidence, closing arguments, and jury safety concern. (DE 73 at 15–16; see also *id.* at 8-9.) *Strickland* does require a court assessing prejudice to consider the totality of the evidence before the factfinder. 466 U.S. at 695–96. The Court has done so in reviewing the prejudice rulings challenged here.

That totality principle is distinct, however, from a freestanding cumulative error theory that aggregates acts already determined not to constitute constitutional error. The Fourth Circuit has held that ineffective assistance claims are reviewed individually, and that legitimate cumulative error analysis concerns the combined effect of matters actually determined to be constitutional error. *See Fisher v. Angelone*, 163 F.3d 835, 852 & n.9 (4th Cir. 1998). Here, neither the PCR court nor this Court has identified multiple constitutional errors to aggregate. The Court, therefore, considers the entire trial record when evaluating prejudice from each asserted *Strickland* deficiency. That said, *Fisher* does not permit a collection of non-

17

errors to become an independent constitutional violation by aggregation. The cumulative prejudice objection is overruled, and Objection Two is overruled in full.

### 3.     Objection Three - Ground Three

Ground Three alleges ineffective assistance by trial and PCR counsel in connection with the allegedly false gun-theft evidence and "prejudicial prosecutorial misconduct." (DE 1 at 8–9, 17–18.) The Report observed that Petitioner expressly acknowledged PCR counsel did raise the gun-theft issue in state PCR, although Petitioner believed counsel did not articulate it broadly enough. Because the underlying trial counsel issue was the same issue asserted as Ground One, claim 4, the Report treated that component as already resolved on the merits. It also concluded that any standalone claim against PCR counsel was barred by § 2254(i). (DE 62 at 52–53.) Respondent makes the same points in its reply to the objections. (DE 75 at 2.)

Petitioner objects that the Report's characterization of Ground Three is too narrow. He explains that he invoked PCR counsel's performance as cause under *Martinez*, rather than as an independent basis for relief (DE 73 at 17–18), and he argues that the State relied on or failed to correct materially false gun-theft testimony in violation of *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972) (DE 73 at 18–20). Liberally construed, the objection presents three possible theories: the preserved trial counsel claim concerning the gun evidence; PCR counsel as a *Martinez* cause for a defaulted trial counsel claim; and an independent due process claim based on knowing use of false testimony.

**Martinez and PCR counsel.** The relevant trial counsel gun claim was not omitted from the initial PCR proceeding. PCR counsel raised it, the PCR court adjudicated it, and it appears in this federal action as Ground One, claim 4. (DE 62 at 25–28, 52–53; App. at 2429–30.) *Martinez* supplies cause when deficient initial-review collateral counsel failed to exhaust a substantial trial counsel claim; it does not provide a second standard of review for a trial counsel claim that was actually raised and adjudicated. *See Mahdi*, 20 F.4th at 893–94; *Owens*, 967 F.3d at 423. And to the extent Petitioner seeks relief because PCR counsel presented the issue inartfully, § 2254(i) forecloses an independent habeas claim based on collateral counsel's performance. Petitioner's framing on this issue blends the procedural effect *Martinez* has on procedural default with an adjudication on the merits of his actual claim. The *Martinez* component of Objection Three, therefore, fails. (DE 73 at 17–18.)

**Standalone due process theory.** Even assuming Petitioner's *Napue* and *Giglio* theory is fairly encompassed within Ground Three rather than first asserted as a new habeas claim in the objections, *Martinez* does not excuse default of that separate prosecutorial misconduct theory. The Supreme Court has confined *Martinez* to defaulted claims of ineffective assistance of trial counsel and has declined to extend the exception even to defaulted claims of ineffective assistance of appellate counsel. *Davila*, 582 U.S. at 529–33. A standalone false testimony claim, therefore, cannot use PCR counsel's alleged ineffectiveness as *Martinez* cause.

The due process theory also fails on the alternative merits analysis. *Napue* and *Giglio* prohibit the State from knowingly using false testimony, or allowing testimony

19

it knows to be false to go uncorrected; the falsehood is material when there is a reasonable likelihood that it could have affected the jury's judgment. *See Napue*, 360 U.S. at 269, 271; *see also Giglio*, 405 U.S. at 153–54. Here, the disputed evidence was Investigator Gray's account that Thompson had previously said Petitioner stole the firearm. The defense established through the gun trace and incarceration records that Petitioner could not have committed that theft and used the contradiction to impeach Thompson and the investigation. (DE 56 at 27–28; App. at 2429–30.) The Court need not decide whether knowledge of the gun trace information should be attributed to the prosecution team because, even assuming falsity and prosecutorial knowledge, materiality is lacking on this record. The jury heard objective evidence disproving the theft accusation, the defense affirmatively exploited the contradiction, and the prosecutor did not urge the theft accusation as true; instead, the State argued that the identity of the original thief was not material to possession of the weapon at the time of the shooting. (DE 56 at 15, 27–28.) In that context, Petitioner has not shown a reasonable likelihood that the false theft assertion could have affected the jury's judgment. (DE 73 at 18–19.)

Petitioner also invokes *Kyles v. Whitley*, 514 U.S. 419, 436 (1995), and urges cumulative consideration of materiality. (DE 73 at 19–20.) *Kyles* requires cumulative evaluation of suppressed favorable evidence for *Brady* materiality; it does not enlarge the *Martinez* exception or dispense with *Napue's* falsity, knowledge, and materiality requirements. The Court nevertheless has considered the gun-theft episode in the context of the other evidence Petitioner identifies. Because the theft assertion was

20

affirmatively disproved before the jury and was not defended by the State as true, viewing it alongside the remaining trial evidence does not establish the reasonable likelihood of an effect on the verdict required by *Napue* and *Giglio*. Objection Three is overruled. The Court adopts the Report's disposition of Ground Three as supplemented by this analysis.

### 4.    Remaining Portions of the Report

The Court has reviewed the portions of the Report not specifically challenged by a cognizable objection and finds no clear error. The current Report also satisfies the purpose of the Court's July 28, 2025, recommittal order by addressing the merits of the preserved subclaims in Ground One and separately analyzing Grounds Two and Three. (DE 50 at 3; DE 62 at 18–53.) Subject to the modifications and supplemental reasoning stated above, the Report will be adopted.

## D.    Certificate of Appealability

A certificate of appealability may issue only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a claim is rejected on the merits, the petitioner must show that reasonable jurists could debate the Court's assessment. When relief is denied on a procedural ground, he must show that reasonable jurists could debate both the procedural ruling and whether the petition states a valid constitutional claim. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003). Petitioner has not made that showing as to the AEDPA disposition of Ground One or the procedural and

21

alternative merits dispositions of Grounds Two and Three. A certificate of appealability is, therefore, denied.

## E.    Conclusion

Accordingly, the Court OVERRULES Petitioner's objections (DE 73) and ADOPTS the Report (DE 62) as modified and supplemented by this Order. Respondent's Amended Motion for Summary Judgment (DE 56; DE 57) is GRANTED. The Petition is DENIED as to Grounds One through Three, and those habeas claims are DISMISSED WITH PREJUDICE. Ground Four was previously withdrawn and is not adjudicated by this Order. A certificate of appealability is DENIED. The Clerk is directed to enter judgment and close this case

**IT IS SO ORDERED.**

_____
Joseph Dawson, III
United States District Judge

Florence, South Carolina
August 13, 2026

## NOTICE OF RIGHT TO APPEAL

A party seeking to appeal must file a notice of appeal with the Clerk of Court within thirty (30) days after entry of the judgment. Fed. R. App. P. 3, 4(a)(1)(A).